```
THIS OPINION IS CITABLE
    AS PRECEDENT OF
     THE T.T.A.B.
```

UNITED STATES PATENT AND TRADEMARK
OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451

DUNN
Mail date:  April 27, 2005

Opposition No. 91125458

Pioneer Kabushiki Kaisha dba
Pioneer Corporation

v.

Hitachi High Technologies
America, Inc.

Before Seeherman, Quinn, and Bucher, Administrative Trademark
Judges.

By the Board:

    This case comes up on the third round of discovery motions

filed in the course of this proceeding:

    a) applicant's motion for a protective order to prevent
       the taking of additional depositions, filed April 26,
       2004;

    b) applicant's motion to compel supplemental responses to
       document requests, filed July 12, 2004; and

    c) opposer's motion for sanctions for failure to produce
       witnesses for depositions, filed July 19, 2004.[1]

    We briefly review the relevant chronology.  On April 16,

2002, Pioneer Kabushiki Kaisha dba Pioneer Corporation (Pioneer)

---

[1]     The delay in acting upon these matters is regretted.

filed a notice of opposition against application Serial No. 76208230 on the ground that applicant Hitachi High Technologies America, Inc.'s (Hitachi) mark SUPERSCAN ELITE, if used on its audio and video goods, would so resemble Pioneer's previously registered mark ELITE (Registration No. 1591868) for the same or similar goods as to be likely to cause confusion. The notice of opposition was subsequently amended to add claims that Hitachi does not have a bona fide intention to use the mark, and that Hitachi's use of its mark will dilute Pioneer's famous mark. Hitachi's answer denied the salient allegations of the amended notice of opposition.

On May 16, 2003, the Board denied as moot Pioneer's original and renewed motions to compel supplemental discovery responses, finding that the discovery responses already had been supplemented. On January 13, 2004, the Board denied as moot Hitachi's motion for discovery sanctions against Pioneer for Pioneer's failure to produce a witness for deposition, finding that the parties had come to an agreement as to how and when the deposition would be conducted. However, the Board granted Pioneer's cross-motion to compel the continued deposition of Hitachi's officer Michael Levans in both his capacity as a Fed. R. Civ. P. 30(b)(6) witness and in his individual capacity, based on its finding that the original deposition had been adjourned to enable Hitachi to complete its document production. The Board reset discovery to close on May 30, 2004.

**HITACHI'S MOTION FOR A PROTECTIVE ORDER TO PREVENT THE TAKING OF ADDITIONAL DEPOSITIONS**

On April 16, 2004, following Hitachi's supplemental production of documents on the claim that Hitachi has no bona fide intention to use the SUPERSCAN ELITE mark, Pioneer indicated to Hitachi by letter that it intended to depose six additional Hitachi employees, each named in the documents produced by Hitachi, regarding the claim that Hitachi has no bona fide intention to use the SUPERSCAN ELITE mark. Hitachi contends that these additional depositions are duplicative, unnecessary, and vexatious, and seeks a protective order barring the depositions.

Hitachi argues that it has responded to four sets of interrogatories totaling 65 questions, four sets of requests for document production totaling 61 requests, and three sets of requests for admission totaling 41 requests; and that "hundreds of boxes" of documents have been made available to Pioneer. In addition, Hitachi argues that Pioneer issued a subpoena duces tecum with eighteen production categories, and deposed two of Hitachi's senior officers: Mr. Levans, Vice President and General Manager of the Electronics Product Division, and Mr. Snokes, Executive Vice President and General Counsel. Pursuant to the

Board's earlier order, Hitachi notes that Pioneer will be allowed to further depose Mr. Levans.[2]

Pioneer opposes entry of the requested protective order, contending that all of the additional people were identified in discovery documents produced by Hitachi as "intimately involved in the decisions regarding creation, use, pricing, marketing and distribution of [goods under] the subject marks"; that "Mr. Levans cannot personally testify to the thought processes, discussions or communications" among the potential deponents; and that the notices of discovery deposition were appropriately served on these witnesses.

While a party may take the discovery deposition of "any person" under Fed. R. Civ. P. 30(a), the Board has the power to limit or bar a deposition if it determines that the discovery sought is obtainable from other sources that are more convenient and less burdensome or duplicative. *See* Fed. R. Civ. P. 26; *FMR Corp. v. Alliant Partners*, 51 USPQ2d 1759 (TTAB 1999). Rule 26(c) emphasizes "the complete control that the court has over the discovery process." Wright & Miller, 8 Fed. Prac. & Proc. Civ.2d §2036 (1990). Because it is impossible to set out in a

---

[2]    The Board will not address Hitachi's argument that it is "frivolous" for Pioneer to maintain the claim that Hitachi lacked a bona fide intent to use the mark in the face of Levans' testimony and the documents already produced, including those relied upon by Pioneer in opposing entry of a protective order. *See Lane Ltd. v. Jackson International Trading Co.*, 33 USPQ2d 1351, 1355 fn.7 (TTAB 1994); *Commodore Electronics Ltd. v. CBM Kabushiki Kaisha*, 26 USPQ2d 1503, 1507 (TTAB 1993). Pioneer's pleading of the claim is sufficient, and its time for proving its case has not yet arrived. This order is limited to the discovery motions listed above.

rule all the circumstances that may require limitations on discovery or the kinds of limitations that may be needed, the rules, instead, "permit the broadest scope of discovery and leave it to the enlightened discretion of the … court to decide what restrictions may be necessary in a particular case." *Id*.  In view of the limited jurisdiction of the Board in deciding only issues of registrability, "each party and its attorney has a duty not only to make a good faith effort to satisfy the discovery needs of its opponent but also to make a good faith effort to seek only such discovery as is proper and relevant to the specific issues involved in the case."  *See Luehrmann v. Kwik Kopy Corp.*, 2 USPQ2d 1303, 1305 (TTAB 1987); *Sentrol, Inc. v. Sentex Systems, Inc.*, 231 USPQ 666, 667 (TTAB 1986).

Trademark Rule 2.120(f) provides that, upon motion by a party from whom a discovery deposition is sought, and for good cause shown, the Board may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, undue burden or expense.  Among the types of discovery orders that may be entered, the Board has the discretion to enter a protective order that a discovery deposition not be had.  *See* Fed. R. Civ. P. 26(c)(1).  The party seeking a protective order bears the burden to show good cause therefor.  To establish good cause, the movant must submit "a particular and specific demonstration of fact, as distinguished from stereotyped and

5

conclusory statements." *FMR Corp., supra* at 1760 (citation omitted).

## *Deposition of Shigehiko Kobayashi*

Hitachi argues that Mr. Kobayashi is an executive Vice President, a member of the Board of Directors, and Mr. Levans' immediate superior, who reports directly to Hitachi's president; that any information regarding Hitachi's adoption and use of trademarks would reach Mr. Kobayashi through Mr. Levans, Vice President and General Manager of the Electronics Product Division; and that, as a high level executive, Mr. Kobayashi should not be required to attend the noticed deposition.

Pioneer contends that Mr. Kobayashi was an "involved participant in the SUPERSCAN or SUPERSCAN ELITE mark throughout 2003 and 2004" as demonstrated by three email messages.[3] On March 11, 2003, a Hitachi employee sent an email to Mr. Levans and Yugi Hidaka, with a copy to Mr. Kobayashi, discussing a prospective deal to establish the SUPERSCAN or SUPERSCAN ELITE brand in partnership with another business. (Pioneer's

---

[3] The documentary evidence is largely Hitachi's internal email, and was marked confidential and submitted under seal. The Board will exercise discretion in describing the documents, and refer only to Mr. Levans, and the six potential deponents, by name and title.

The term SUPERSCAN alone, instead of the mark SUPERSCAN ELITE is present in many email messages. Since the emails were produced by Hitachi in response to document requests regarding the subject mark SUPERSCAN ELITE, and submitted by Pioneer in its opposition to Hitachi's motion for a protective order, we find that there is no dispute as to the relevance of the emails, and we will presume the internal email employed shorthand references to the full mark.

Opposition, Bates No. 11-12). On January 26, 2004, Mr. Levans sent an email to Mr. Hidaka and Masatsugu Misu, with copies to three people, including Mr. Kobayashi, with his ideas for a meeting with a prospective SUPERSCAN buyer. (Pioneer's Opposition, Bates No. 386). On January 28, 2004, Mr. Misu sent an email to sixteen people, including Mr. Kobayashi, attaching "presentation material for our SUPERSCAN proposal." (Pioneer's Opposition, Bates No. 129).

We find that the documentary evidence relied upon by Pioneer to demonstrate that Mr. Kobayashi has knowledge of Hitachi's bona fide intent to use the mark is unconvincing, insofar as the three SUPERSCAN emails were not written by Mr. Kobayashi, were not directed exclusively to Mr. Kobayashi, and apparently elicited no written response. The evidence supports Hitachi's position that Mr. Kobayashi has no unique or superior personal knowledge of the facts, and that Hitachi has shown good cause for entry of a protective order. *See Folwell v. Hernandez*, 210 FRD 169 (M.D.N.C. 2002)(unless a high level executive has unique personal knowledge about the controversy, the court should regulate the discovery process to avoid oppression, inconvenience, and burden to the corporation and to the executive); *FMR Corp. v. Alliant Partners*, *supra*, at 1762 ("courts have granted a protective order when a party seeks to initiate its discovery 'at the top' before exhausting less intrusive discovery methods").

7

Hitachi's motion for a protective order is granted with respect to the deposition of Mr. Kobayashi.

*Deposition of Mr. Hakai*

In Hitachi's April 21, 2004 letter responding to Pioneer's letter that Pioneer intended to depose six additional Hitachi employees, Hitachi informed Pioneer that "we have no idea who Mr. Hakai is."  In an April 22, 2004 letter, Pioneer informed Hitachi that "Mr. Hakai works in the Engineering Department and is also mentioned in the documents that you have produced."  The relevant document is an organizational chart effective October 1, 2002 which shows the current holder of, and relationship among, nineteen positions of "EPD" (presumably the "Electronics Product Division").  One box has been darkened and is barely discernible, but the words "Engineering Dept." and "Hakai" appear. (Pioneer's Opposition, Bates No. 032).  The chart does not make any reference to the mark SUPERSCAN ELITE.

The Board agrees with Hitachi that Pioneer's evidence does not support its conclusion that Mr. Hakai has been "intimately involved in the decisions regarding creation, use, pricing, marketing and distribution of [goods under] the subject marks … ."  In fact, there is no evidence that Mr. Hakai has had any involvement with the SUPERSCAN ELITE mark, or has any knowledge relevant to Hitachi's bona fide intent to use the mark.  Hitachi has shown good cause for entry of a protective order, and its

8

motion for a protective order is granted with respect to the deposition of Mr. Hakai.

*Depositions of Yuji Hidaka, Dennis Battaglia, Masatsugu Misu and Anthony Duda*

According to the EPD organizational chart, the remaining four potential deponents (Hidaka, Battaglia, Misu, and Duda) are subordinates of Mr. Levans, General Manager of the department. Mr. Hidaka is listed as Deputy General Manager, and Mr. Battaglia is listed under Mr. Hidaka as the Manager of the Home Electronics Department. Messrs. Misu and Duda are listed as account managers under Mr. Battaglia. Hitachi describes the four men as part of the sales team for Hitachi's Electronic Product Division, with all four ultimately reporting to Mr. Levans.

Pioneer seeks the depositions of these men on the basis of their alleged unique and intimate knowledge of Hitachi's marketing plans for its SUPERSCAN ELITE mark as shown by 74 pages of email messages produced by Hitachi and relied upon by Pioneer in its assertion that the potential deponents have information relevant to Pioneer's claim that Hitachi lacked a *bona fide* intent to use the mark in commerce.

*Deposition of Dennis Battaglia*

Dennis Battaglia was named in many of the 74 pages of email which discussed the creation of the SUPERSCAN ELITE logo and the pricing and marketing of the products to be associated with the

9

mark. (Pioneer's Opposition, e.g. Bates No. 013, 014, 016, 019, 021, 022, 032, 105, 117, 122). Pioneer relies on the prevalence of Mr. Battaglia's name in the email messages to argue that he has knowledge of facts relevant to Pioneeer's claim that Hitachi lacked a bona fide intent to use the mark.

Hitachi points out that Dennis Battaglia neither initiated nor responded to any of the email messages. Indeed, the documentary evidence demonstrates that Mr. Battaglia was never the sole recipient of an email message, and in only a few instances was Mr. Battaglia one of several recipients (Pioneer's Opposition, e.g. Bates No. 16, 122, 129, 251). In all other cases, Mr. Battaglia was merely one in a group, generally numbering four to sixteen people, "copied" on emails to others. In these circumstances, we see no evidence that Mr. Battaglia has unique knowledge on the issue of whether Hitachi had the requisite *bona fide* intent to use the SUPERSCAN ELITE mark, or indeed any knowledge, and we find that Hitachi has shown good cause for entry of a protective order. Hitachi's motion for a protective order is granted with respect to the deposition of Dennis Battaglia.

## *Depositions of Yuji Hidaka, Masatsugu Misu and Anthony Duda*

In contrast to Dennis Battaglia, the remaining men not only were "kept in the loop" regarding SUPERSCAN ELITE developments,

but took an active role in generating information for others regarding the use of the SUPERSCAN ELITE mark.

The documents relied upon by Pioneer in seeking Mr. Hidaka's deposition indicate that Mr. Hidaka authored emails on the sales negotiations for plasma TV products (Pioneer's Opposition, Bates No. 019-020); the development chart for the SUPERSCAN plasma TV (Pioneer's Opposition, Bates No. 105-106); the model number to be used on the SUPERSCAN products (Pioneer's Opposition, Bates No. 117, 121); a SUPERSCAN import issue (Pioneer's Opposition, Bates No. 127); and packaging and shipping instructions for SUPERSCAN products (Pioneer's Opposition, Bates No. 198-200, 207-209, 402-405).

The documents relied upon by Pioneer in seeking Masatsugu Misu's deposition indicate that Mr. Misu forwarded information on the dimensions of the SUPERSCAN products (Pioneer's Opposition, Bates No. 122); SUPERSCAN presentation material (Pioneer's Opposition, Bates No. 129); SUPERSCAN price quotations (Pioneer's Opposition, Bates No. 196, 248-249, 270-271); the arrangements for a sales meeting (Pioneer's Opposition, Bates No. 202); and information on how SUPERSCAN products would be shipped (Pioneer's Opposition, Bates No. 203-204, 429-430).

The documents relied upon by Pioneer in seeking Anthony Duda's deposition indicate that Mr. Duda developed a chart on SUPERSCAN prices (Pioneer's Opposition, Bates No. 021); forwarded SUPERSCAN ELITE product information (Pioneer's Opposition, Bates

11

No. 022); forwarded SUPERSCAN carton box designs (Pioneer's Opposition, Bates No. 402); and forwarded information on the SUPERSCAN logo (Pioneer's Opposition, Bates No. 422, 443-454).

As Hitachi notes, Mr. Levans was listed on each email sent or received by these three men. However, Hitachi's argument that harassment could be the only motive for their depositions is not well taken. Pioneer is entitled to obtain discovery testimony with respect to subject matter which is discoverable under Fed. R. Civ. P. 26(b)(1). While the testimony of Messrs. Hidaka, Misu and Duda may overlap with Mr. Levan's testimony on many, if not all, points, Hitachi has not shown that their testimony would be entirely duplicative and would not lead to relevant information based on their independent experiences. Hitachi thus has failed to show good cause for entry of a protective order with respect to the depositions of Yuji Hidaka, Masatsugu Misu and Anthony Duda.

In sum, Hitachi's motion for a protective order is granted with respect to Messrs. Kobayashi, Hakai and Battaglia, and it is denied with respect to Messrs. Hidaka, Misu and Duda.

Accordingly, Pioneer is allowed until thirty days from the mailing date of this order to schedule and conduct the depositions of Yuji Hidaka, Masatsugu Misu, and Anthony Duda, as follows: These three depositions are limited to no longer than three hours per deponent, are limited to the subject of Hitachi's bona fide intent to use the mark SUPERSCAN ELITE on the goods

12

listed in the application, and, unless the parties consent to a different schedule, the witnesses are not available, or other circumstances arise which make such scheduling unduly difficult, the depositions are to be conducted consecutively over the course of one and one half days.[4]

**PIONEER'S MOTION FOR JUDGMENT AS A SANCTION**

As noted above, Pioneer served the notices of deposition on April 19, 2004, and Hitachi filed its motion for a protective order on April 26, 2004. The Board had neither suspended proceedings nor decided Hitachi's motion by the scheduled deposition dates of May 11-13, 2004.[5] Pioneer was informed by

---

[4] The parties may extend the date for these three depositions on consent, but if the parties fail to agree to a later date, the Board will adhere to the timetable set by this order, namely, that the depositions must be taken within thirty days of the mailing date of this order. Both parties are expected to cooperate in the timely taking of these discovery depositions.

[5] The Board notes that much time and effort by the parties and the Board might have been conserved if either party had requested a telephone conference on Hitachi's motion for a protective order. The Board's announcement of the permanent expansion of telephone conferencing notes that motions to compel attendance of a witness at a discovery deposition and motions to quash a notice of deposition are especially suitable for disposition on an expedited basis. See the June 20, 2000 Official Gazette notice titled *Permanent Expansion of Telephone Conferencing on Interlocutory Matters in Inter Partes Cases Before the Trademark Trial and Appeal Board*. The notice also is posted on the USPTO's home page, at *http://www.uspto.gov/web/offices/com/sol/og/2000/week25/pattele.htm*.
While the Board may initiate such telephone conferences, the prompt review of the necessary papers may be delayed, as it was here, when multiple motions continue to be filed. By the time the Board issued its suspension order three months after Hitachi's motion for a protective order was filed, attendance at the scheduled depositions was a moot point, and the number and subject matter of the motions subsequently filed made a telephone conference much less appropriate.

Hitachi that the six Hitachi witnesses would not appear for the noticed depositions. The six witnesses did not appear.

On July 12, 2004, Hitachi filed a motion to compel supplemental responses to document requests. On July 19, 2004, Pioneer filed a motion for sanctions pursuant to Trademark Rule 2.120(g)(2), seeking entry of judgment for Hitachi's failure to produce requested discovery in the form of the witnesses for depositions. On July 26, 2004, the Board suspended proceedings retroactive to the July 12, 2004 filing date of Hitachi's motion to compel.

Insofar as proceedings were suspended, Hitachi did not file a response to Pioneer's motion for judgment as a sanction.[6] In view of the long pendency of these motions, and because, on its face, Pioneer's motion for sanctions is not well-taken, we will not further delay this proceeding by resetting Hitachi's time to submit a response. The Board will now determine Pioneer's motion for judgment as a sanction.

---

[6] On August 13, 2004, Hitachi filed a motion to seek clarification of the Board's suspension order. Specifically, in view of the close timing of the filing of the various discovery motions and issuance of the Board's order, Hitachi sought to clarify whether Pioneer's motion for sanctions would be decided with Hitachi's motion to compel, making Hitachi's response due immediately, or if action on Pioneer's motion was suspended, and Hitachi's time for response would be reset when proceedings resumed. Pioneer opposed the motion for clarification, arguing that Pioneer's motion for sanctions had been received by Hitachi prior to issuance of the Board's suspension order, and that Hitachi had failed to file a timely response. Hitachi's motion is denied as moot for the reasons explained later herein.

At the outset, the Board notes that large sections of Pioneer's motion for sanctions are, in effect, a sur-reply brief to Hitachi's motion for a protective order.[7] See Pioneer's Motion for Sanctions, p. 4-9, 16-22. Trademark Rule 2.127(e)(1) prohibits the filing of sur-reply briefs. Accordingly, Pioneer's arguments in its motion for sanctions regarding the merits of Hitachi's motion for a protective order or the points made in Hitachi's reply brief have been given no consideration.

With respect to Pioneer's arguments regarding whether Hitachi's failure to produce its witnesses for noticed depositions warrants sanctions under Trademark Rule 2.120(g)(2), we note that, prior to the scheduled deposition dates, Hitachi filed a motion (decided herein) for a protective order to prevent the taking of the depositions. Plainly, the appearance by Hitachi's employees at the depositions would moot Hitachi's motion for a protective order barring the depositions.[8] In these circumstances, we do not consider Hitachi's non-appearance at

---

[7]    The Board also notes that there is no reason to file complete copies of exhibits which were submitted previously.

[8]    Moreover, insofar as the Board does not award attorneys' fees or other costs, a belated grant of Hitachi's motion for a protective order could not serve to make Hitachi whole for six depositions which would have already taken place. See generally Trademark Rules 2.120(f); 2.120(g)(1); and 2.127(f); TBMP §502.05 (2nd. ed. rev. 2004).

depositions to be sanctionable conduct, and we deny Pioneer's motion for sanctions in the form of judgment.[9]


**HITACHI'S MOTION TO COMPEL PRODUCTION OF SURVEY DOCUMENTS**

Hitachi moves to compel supplemental responses to the discovery requests listed below, part of Hitachi's first request for production of documents, served February 11, 2003, or in the alternative, to allow Hitachi a limited time to serve a subpoena on Robert Klein, the non-party expert witness in possession of the requested documents.  Pioneer opposes the motion on the ground that it cannot provide what it does not possess; that Hitachi's document request is not applicable to documents held by a non-party witness; and that insofar as discovery has closed, Hitachi has foregone its opportunity to subpoena the requested documents.

> Document Request No. 32
> All documents referring or relating to any survey or study Opposer has conducted or has caused to be conducted regarding recognition of or reaction to Opposer's mark or Applicant's Mark, or any confusion among the marks.

---

[9] We are not persuaded that the circumstances here are analogous to the federal court case cited by Pioneer, *Pioche Mines Consolidated, Inc., et. al. v. Dolman*, 333 F.2d 257, 268-269, 8 Fed. R. Serv. 2d 37 (9th Cir. 1964), *cert. denied*, 380 U.S. 956, 85 S.Ct. 1082, 13 L.Ed. 2d 972 (1965), for the proposition that, even if a motion for a protective order is pending, a party is subject to judgment as a sanction for failure to appear at a deposition.
We note that, in the other federal court case cited by Pioneer in support of sanctions, *FAA v. Landy*, 705 F.2d 624 (2d Cir. 1983), there was no motion for judgment as a sanction, but an issue as to the admissibility of a deposition.

16

> Document Request No. 36[10]
> All documents and things reviewed, exchanged
> with, sent to, or relied upon by any expert
> retained by Opposer in relation to this
> opposition proceeding.
>
> Document Request No. 37
> All documents and things to be utilized by
> any expert witness in any testimony connected
> with this opposition proceeding.

On April 28, 2004, Pioneer notified Hitachi by letter that Pioneer intended to use the testimony of Robert Klein, a survey expert, and forwarded his *curriculum vitae*. On April 30, 2004, Hitachi notified Pioneer that Hitachi wished to depose Mr. Klein but that, before his deposition could be scheduled, Pioneer would need to provide supplemental responses to the above document requests. On the same day, Pioneer served Hitachi with its second supplemental responses to the document requests. To each of the requests listed above, Pioneer made the same response:

> Responding party will produce documents
> responsive to this category at a mutually
> convenient time and location.

On May 5, 2004, Pioneer provided Hitachi with copies of Mr. Klein's report and various exhibits.

---

[10]    In federal court, parties are required to disclose the identity of potential expert witnesses, accompanied by a written expert report containing "a complete statement of all opinions to be expressed and the basis and reasons therefor" and "the data or other information considered by the witness in forming the opinions." *See* Fed. R. Civ. P. 26. The Board has declined to adopt the mandatory disclosure requirements of the federal rules. *See* Trademark Rule 2.120(a)("The provisions of the Federal Rules of Civil Procedure relating to automatic disclosure, scheduling conferences, conferences to discuss settlement and to develop a discovery plan, and transmission to the court of a written report outlining the discovery plan, are not applicable to Board proceedings.").

On May 20, 2004, Hitachi deposed Mr. Klein. During his deposition, Mr. Klein referred to documents generated in the course of conducting the survey. On May 28, 2004, Hitachi informed Pioneer by letter that Hitachi would present a report by survey expert George Mantis rebutting Mr. Klein's testimony and requested that Pioneer "immediately produce copies of all documents in the custody or control of Mr. Klein or his firm relating to the survey he performed, including, but not limited to the data printouts, the completed questionnaires and screeners, and the validation documents and tally sheets." On June 14, 2004, Hitachi sent a second letter to Pioneer repeating the request for supplemental documents.

On July 12, 2004, Hitachi filed the instant motion to compel.[11] On July 27, 2004, Pioneer filed its opposition thereto, including counsel's declaration that, with one exception,[12] "At no time have I ever had possession, custody or control of the documents referred to by Mr. Klein in his deposition."

Fed. R. Civ. P. 34(a) provides that a party may request documents and things "which are in the possession, custody or control of the party upon whom the request is served." Control

---

[11] The Board notes that Hitachi's motion to compel demonstrates Hitachi's good faith effort to resolve the discovery dispute and includes the required copies of the relevant document requests and responses pursuant to Trademark Rule 2.120(e)(1).

[12] The declaration of Pioneer's counsel, Mr. Skousen, notes that a data printout sheet was provided to him by Mr. Klein the day before Mr. Klein's deposition was taken, but it was returned to Mr. Klein.

with respect to the production of documents is defined as "not only as possession, but as the legal right to obtain the documents requested upon demand." *Cochran Consulting, Inc. v. Uwatec USA, Inc.,* 102 F.3d 1224, 1229-1230, 41 USPQ2d 1161, 1166 (Fed. Cir. 1996), *quoting Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984).[13]  If documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a nonparty witness. Wright & Miller, 8A Fed. Prac. & Proc. Civ.2d §2204 (1990).  *See Haworth Inc. v. Herman Miller Inc.*, 998 F.2d 975, 978, 27 USPQ2d 1469, 1472 (Fed. Cir. 1993)("court could properly require [party] to seek discovery from its party opponent before burdening the nonparty").[14]  Following a "highly fact-specific" inquiry into the circumstances, parties have been found to have a legal right to obtain requested documents that have been turned over to the

---

[13]     Lack of control may be considered an objection to the discovery request and, like any such objection, it may be waived.  Wright & Miller, 8A Fed. Prac. & Proc. Civ.2d §2210 (1994, updated by 2005 Pocket Part); *Henderson v. Zurn Indus., Inc.*, 131 FRD 560, 564 (D. Ind. 1990).

[14]     The cases cited by the parties are largely inapposite.  The Board will not discuss the cases which construe Fed. R. Civ. P. 26 mandatory disclosure requirements not applicable to Board proceedings, for example, *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co. of N.Y., Inc.*, 171 FRD 57 (S.D.N.Y. 1997); *Mushroom Associates v. Monterey Mushrooms, Inc.*, 25 USPQ 1304 (N.D. Cal. 1992); *In re Air Crash Disaster at Stapleton Int'l Airport*, 720 F. Supp. 1442 (D. Co. 1988); and *Quadrini v. Sikorsky Aircraft Division, United Aircraft Corp.*, 74 FRD 594 (D. Conn. 1977).  Similarly, the Board will not discuss those cases in which the responding party objected to production of documents on the basis of work product privilege, a privilege which has not been asserted here.  *See Hager v. Bluefield Regional Medical Center, Inc.,* 170 FRD 70 (D. D.C. 1997); and *Vaughan Furniture Co. Inc. v. Featureline Mfg., Inc.,* 156 FRD 123 (M.D.N.C. 1994).

party's attorney, its insurer, a related company, or a former employee who receives compensation.  Wright & Miller, 8A *Fed. Prac. & Proc. Civ2d* §2210 (1990).  *See Alper v. U.S.A.*, 190 FRD 281, 283 (D. Mass 2000)("Given the fact that Dr. Becker is Defendant's expert, the documents which Plaintiff seeks from him may be considered to be within Defendant's control."); *In re Folding Carton Antitrust Litigation*, 76 FRD 420, 423 (N.D. Ill. 1977)("While the right to withhold payment does not ipso facto mean defendants will be able to procure the documents, it is clearly an indicia of control.  At the very least, defendants should make an inquiry … This is especially true where, as here, defendants do not assert that the [non-parties] are unwilling or unable to cooperate.").

Here, we find that Hitachi acted reasonably in assuming that documents related to the survey Pioneer commissioned would be in Pioneer's possession or control, and that Pioneer acted unreasonably in failing to inform Hitachi that they were not, thereby depriving Hitachi of the opportunity to timely seek a subpoena and obtain the documents by other means.  A party may not mislead its adversary by stating that it will produce documents, and then fail to do so and claim that the documents are not within its possession or control.  "[I]t should be enough for the party to respond by saying that a particular document is not in existence or that it is not in the responding party's possession, custody, or control."  Wright & Miller, 8A Fed. Prac.

20

& Proc. Civ.2d §2213 (1990) citing *RCA Mfg. Co. v. Decca Records, Inc.*, 1 FRD 433, 436 (W.D.N.Y. 1940)("If the documents and things sought to be produced are not in [the party's] custody or under their control, a statement to that effect is sufficient to excuse it from compliance with an order for their production, but if [the party] know[s] where and under whose control they presently are then [the party] shall so state in detail."); *Rayman v. American Charter Federal Sav. & Loan Ass'n*, 148 FRD 647, 651 (D. Neb. 1993)("If all such documents have been produced, defendant should clearly indicate that fact under oath."). *See also Petroleum Ins. Agency v. Hartford Acc. & Indem. Co.*, 106 FRD 59, 66 (D. Mass. 1985).

Hitachi's motion to compel is granted. To the extent that the requested supplemental documents are under Pioneer's control as the party commissioning the survey, Pioneer is ordered to serve Hitachi with copies of any documents responsive to Document Request Nos. 32, 36 and 37, including the documents described in Mr. Klein's deposition, within 30 days of the mailing date of this order.

If Pioneer is unable to comply for lack of possession or control of the responsive documents, Pioneer must file a declaration with the Board within thirty days of the mailing date of this order so stating, with a full explanation of its request to Mr. Klein for copies of the responsive documents, and the rationale provided by Mr. Klein for any refusal to provide such

21

copies. On receipt of such a declaration, the Board will suspend proceedings to allow Hitachi time to obtain the requested supplemental documents by subpoena.

Discovery closed in this case on May 30, 2004. The Board will reopen discovery for the limited purpose of allowing both parties to complete follow-up discovery regarding the three discovery depositions of Hitachi employees ordered herein and the production of survey documents by Pioneer also ordered herein.

In addition, each party is hereby ordered to respond to any outstanding discovery requests within thirty days of the mailing date of this order.

Discovery and trial dates are reset as follows:

DISCOVERY to close June 15, 2005

30-day testimony period for party
in position of plaintiff to close: September 13, 2005

30-day testimony period for party
in position of defendant to close: November 12, 2005

15-day rebuttal testimony period
to close: December 27, 2005

In each instance, a copy of the transcript of testimony together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony. Trademark Rule 2.125.

Briefs shall be filed in accordance with Trademark Rule 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.129.

22